TRACY L. WILKISON
United States Attorney
SCOTT M. GARRINGER
Assistant United States Attorney
Chief, Criminal Division
JENNIFER L. WAIER (Cal. Bar No. 209813)
Assistant United States Attorney
Santa Ana Branch Office
    United States Courthouse
    411 West Fourth Street, Suite 8000
    Santa Ana, California 92701
    Telephone: (714) 338-3550
    Facsimile: (714) 338-3708
    E-mail:   Jennifer.Waier@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

SOUTHERN DIVISION

UNITED STATES OF AMERICA,

      Plaintiff,

         v.

OLAYINKA FAMOFO-IDOWU,

      Defendant.

Case No. SA CR 21-33-JLS

PLEA AGREEMENT FOR DEFENDANT
OLAYINKA FAMOFO-IDOWU

    1.   This constitutes the plea agreement between OLAYINKA FAMOFO-IDOWU ("defendant") and the United States Attorney's Office for the Central District of California (the "USAO") in the above-captioned case.  This agreement is limited to the USAO and cannot bind any other federal, state, local, or foreign prosecuting, enforcement, administrative, or regulatory authorities.

DEFENDANT'S OBLIGATIONS

    2.   Defendant agrees to:

        a.   At the earliest opportunity requested by the USAO and provided by the Court, appear and plead guilty to counts one and

twenty of the indictment in <u>United States v. Famofo-Idowu</u>, Case No. SA CR 21-33-JLS, which charges defendant with wire fraud, in violation of 18 U.S.C. § 1343, and marriage fraud conspiracy, in violation of 18 U.S.C. § 371.

   b. Not contest facts agreed to in this agreement.

   c. Abide by all agreements regarding sentencing contained in this agreement.

   d. Appear for all court appearances, surrender as ordered for service of sentence, obey all conditions of any bond, and obey any other ongoing court order in this matter.

   e. Not commit any crime; however, offenses that would be excluded for sentencing purposes under United States Sentencing Guidelines ("U.S.S.G." or "Sentencing Guidelines") § 4A1.2(c) are not within the scope of this agreement.

   f. Be truthful at all times with the United States Probation and Pretrial Services Office and the Court.

   g. Pay the applicable special assessments at or before the time of sentencing unless defendant has demonstrated a lack of ability to pay such assessments.

   h. Defendant agrees to forfeit to the FBI the following four digital devices seized from defendant at time of his arrest in Amsterdam:  (1) a black TCL cell phone; (2) a black Samsung cell phone with IMEI 355454110076197; (3) a black Samsung cell phone with IMEI 355356114740688; and (4) a black Samsung cell phone with IMEI 355464113295272 and a T-Mobile SIM card with the numbers 8901260192738409987 60.50 TM9263.

## THE USAO'S OBLIGATIONS

3. The USAO agrees to:

a. Not contest facts agreed to in this agreement.

b. Abide by all agreements regarding sentencing contained in this agreement.

c. At the time of sentencing, move to dismiss the remaining counts of the indictment as against defendant. Defendant agrees, however, that at the time of sentencing the Court may consider any dismissed charges in determining the applicable Sentencing Guidelines range, the propriety and extent of any departure from that range, and the sentence to be imposed.

d. At the time of sentencing, provided that defendant demonstrates an acceptance of responsibility for the offense up to and including the time of sentencing, recommend a two-level reduction in the applicable Sentencing Guidelines offense level, pursuant to U.S.S.G. § 3E1.1, and recommend and, if necessary, move for an additional one-level reduction if available under that section.

e. Recommend that defendant be sentenced to a term of imprisonment no higher than the low end of the applicable Sentencing Guidelines range, provided that the offense level used by the Court to determine that range is 20 or higher and the Court does not depart downward in offense level or criminal history category. For purposes of this agreement, the low end of the Sentencing Guidelines range is that defined by the Sentencing Table in U.S.S.G. Chapter 5, Part A.

## NATURE OF THE OFFENSES

4. Defendant understands that for defendant to be guilty of the crime charged in count one, that is, wire fraud, in violation of Title 18, United States Code, Section 1343, the following must be

3

true: (1) the defendant knowingly participated in, devised, or intended to devise a scheme or plan to defraud, or a scheme or plan for obtaining money or property by means of false or fraudulent pretenses, representations, or promises, or omitted facts.  Deceitful statements of half-truths may constitute false or fraudulent representations; (2) the statements made or facts omitted as part of the scheme were material; that is, they had a natural tendency to influence, or were capable of influencing, a person to part with money or property; (3) the defendant acted with the intent to defraud, that is, the intent to deceive and cheat; and (4) the defendant used, or caused to be used, an interstate or foreign wire communication to carry out or attempt to carry out an essential part of the scheme.

5.   Defendant understands that for defendant to be guilty of the crime charged in count twenty, that is, marriage fraud conspiracy, in violation of Title 18, United States Code, Section 371, the following must be true: (1) beginning on a date unknown but no later than January 21, 2015, and continuing until at least on or about October 12, 2016, there was an agreement between two or more persons to commit at least one of the objects of the conspiracy charged in count twenty; (2) the defendant became a member of the conspiracy knowing of at least one of its objects and intending to help accomplish it; and (3) one of the members of the conspiracy performed at least one overt act on or after March 10, 2016 for the purpose of carrying out the conspiracy.

<u>PENALTIES</u>

6.   Defendant understands that the statutory maximum sentence that the Court can impose for a violation of Title 18, United States

4

Code, Section 1343, is: 20 years imprisonment; a three-year period of supervised release; a fine of $250,000 or twice the gross gain or gross loss resulting from the offense, whichever is greatest; and a mandatory special assessment of $100.

7.   Defendant understands that the statutory maximum sentence that the Court can impose for a violation of Title 18, United States Code, Section 371, is: 5 years imprisonment; a three-year period of supervised release; a fine of $250,000 or twice the gross gain or gross loss resulting from the offense, whichever is greatest; and a mandatory special assessment of $100.

8.   Defendant understands, therefore, that the total maximum sentence for all offenses to which defendant is pleading guilty is: 25 years of imprisonment; a three-year period of supervised release; a fine of $500,000 or twice the gross gain or gross loss resulting from the offenses, whichever is greatest; and a mandatory special assessment of $200.

9.   Defendant understands that defendant will be required to pay full restitution to the victim(s) of the offenses to which defendant is pleading guilty.  Defendant agrees that, in return for the USAO's compliance with its obligations under this agreement, the Court may order restitution to persons other than the victim(s) of the offenses to which defendant is pleading guilty and in amounts greater than those alleged in the counts to which defendant is pleading guilty.  In particular, defendant agrees that the Court may order restitution to any victim of any of the following for any losses suffered by that victim as a result: (a) any relevant conduct, as defined in U.S.S.G. § 1B1.3, in connection with the offenses to which defendant is pleading guilty; and (b) any counts dismissed

pursuant to this agreement as well as all relevant conduct, as defined in U.S.S.G. § 1B1.3, in connection with those counts. The parties currently believe that the applicable amount of restitution is approximately $684,819.46, but recognize and agree that this amount could change based on facts that come to the attention of the parties prior to sentencing.

10.  Defendant understands that supervised release is a period of time following imprisonment during which defendant will be subject to various restrictions and requirements. Defendant understands that if defendant violates one or more of the conditions of any supervised release imposed, defendant may be returned to prison for all or part of the term of supervised release authorized by statute for the offense that resulted in the term of supervised release.

11.  Defendant understands that, by pleading guilty, defendant may be giving up valuable government benefits and valuable civic rights, such as the right to vote, the right to possess a firearm, the right to hold office, and the right to serve on a jury. Defendant understands that once the court accepts defendant's guilty pleas, it will be a federal felony for defendant to possess a firearm or ammunition. Defendant understands that the convictions in this case may also subject defendant to various other collateral consequences, including but not limited to revocation of probation, parole, or supervised release in another case and suspension or revocation of a professional license. Defendant understands that unanticipated collateral consequences will not serve as grounds to withdraw defendant's guilty pleas.

12.  Defendant and his counsel have discussed the fact that, and defendant understands that, if defendant is not a United States

citizen, the convictions in this case make it practically inevitable and a virtual certainty that defendant will be removed or deported from the United States.  Defendant may also be denied United States citizenship and admission to the United States in the future. Defendant understands that while there may be arguments that defendant can raise in immigration proceedings to avoid or delay removal, removal is presumptively mandatory and a virtual certainty in this case.  Defendant further understands that removal and immigration consequences are the subject of a separate proceeding and that no one, including his attorney or the Court, can predict to an absolute certainty the effect of his conviction on his immigration status.  Defendant nevertheless affirms that he wants to plead guilty regardless of any immigration consequences that his pleas may entail, even if the consequence is automatic removal from the United States.

FACTUAL BASIS

13.  Defendant admits that defendant is, in fact, guilty of the offenses to which defendant is agreeing to plead guilty.  Defendant and the USAO agree to the statement of facts provided below and agree that this statement of facts is sufficient to support pleas of guilty to the charges described in this agreement and to establish the Sentencing Guidelines factors set forth in paragraph 15 below but is not meant to be a complete recitation of all facts relevant the underlying criminal conduct or all facts known to either party that relate to that conduct.

At times relevant to this plea agreement, defendant resided in Orange County, California, and used the aliases alleged in the indictment.

**WIRE FRAUD (COUNT 1)**

Beginning at least as early as October 11, 2016, and continuing until on or about December 23, 2020, in Orange County, within the Central District of California, and elsewhere, defendant, knowingly and with the intent to defraud, devised, participated in, and executed a scheme to defraud and obtain money from victims by means of materially false and fraudulent representations, and the concealment of material facts in connection with a fraudulent scheme.

In carrying out the scheme, defendant and other co-schemers engaged in the following fraudulent and deceptive acts, practices, and devices, and made the following material misrepresentations, among others:

a.  Defendant and other co-schemers obtained African passports with fake names but their photos on them, which would be shipped to them from other co-schemers.

b.  Defendant and other co-schemers opened mailboxes in fake names throughout the Central District of California to receive the African passports and funds from the victims of the fraud scheme.

c.  Using the African passports, defendant and other co-schemers opened United States bank accounts in those fake names to be used to receive and transfer proceeds from the fraud scheme.

d.  Co-schemers would convince victims to send money to defendant and others using the following methods:

i. <u>Business email compromises</u>.  Co-schemers would identify payment systems for organizations, including small businesses.  The

co-schemers would then take over accounts by pretending to be members of the organizations.  In some cases, the co-schemers would create email addresses that looked like they belonged to the organizations. The co-schemers would often re-direct communications away from the organization's legitimate email accounts.  The co-schemers, purporting to be members of the organizations, would request that the account information for the organizations be updated with bank accounts that defendant and other co-schemers had opened and controlled.  Once they had updated the bank account information, the co-schemers would request that funds be sent to the bank accounts that defendant and other co-schemers had opened and controlled.

ii. <u>Fake invoices</u>.  Co-schemers would send to victims fake invoices that appeared to be for goods or services that the victims used.  The invoices would instruct the victims to send payments to bank accounts that defendant had opened and controlled.

iii. <u>Sham online rentals</u>.  Co-schemers would post sham online listings for rental properties.  When the victims agreed to rent the properties, the co-schemers directed the victims to wire funds to bank accounts that defendant had opened and controlled. Based on false representations by the co-schemers, the victims believed that the money paid for the first months' rent, security deposits, and cleaning fees.  In fact, the funds were not for rental properties.  Instead, the money went to the co-schemers, including defendant.

iv. <u>Romance scams</u>.  Co-schemers would target victims looking for romantic partners or friendships on dating websites and other social media platforms.  The co-schemers created profiles using fake names, locations, images, and personas, allowing the co-schemers

to cultivate relationships with prospective victims.  Once they cultivated these relationships, co-schemers would convince the victims to provide money to the co-schemers or conduct transactions on behalf of the co-schemers.  Co-schemers would persuade these victims to then send payments by mail and wire transfer to defendant for deposit into bank accounts that defendant had opened and controlled.

        v. Duped "employee" victims. Co-schemers would target victims looking for employment to purportedly serve in accounting functions with the co-schemers.  Once the victims had agreed to serve in these capacities, the co-schemers would cause the victims to accept funds into the victims' bank accounts and send money to bank accounts that defendant had opened and controlled.  The victim "employees" lost money in such schemes because the funds sent to them often included fraudulent checks.

    e.  In these ways, defendant would receive payments made by victims of the fraud scheme.  Generally, these payments were made by wire transfer to bank accounts defendant had opened and controlled, or the victim sent the funds via cashier's or personal checks to mailboxes that had been opened to execute the scheme and that defendant controlled.

    f.  Defendant would transfer the fraud proceeds to other co-schemers and kept a portion as a commission.

    In furtherance of the wire fraud scheme, on or about February 14, 2019, defendant caused the transmission of $19,980 from victim C.H.D through a Wells Fargo Bank in New York to a Bank of America account ending in 8650 in Aliso Viejo, California.

1  Through this wire fraud scheme, defendant and others caused more
2  than 10 victims to lose $684,819.46.

3  **MARRIAGE FRAUD (COUNT 20)**

4  The United States Citizenship and Immigration Services ("USCIS")
5  was the agency within the Department of Homeland Security that
6  adjudicated immigration benefits, including visa petitions,
7  naturalization petitions, and refugee and asylum applications.

8  Within USCIS, an Immigration Services Officer ("ISO") was
9  responsible for making decisions concerning the eligibility
10  entitlements of individuals seeking immigration benefits, employment,
11  and/or legal status under the laws of the United States.  As part of
12  this process, an ISO would review applications and petitions; conduct
13  interviews; obtain and review supporting documentation; and
14  approve/deny applications and petitions.

15  An alien could obtain lawful permanent resident status, and
16  ultimately United States citizenship, based on a legitimate marriage
17  to a United States citizen.  If an alien married a United States
18  citizen, the U.S. citizen could file a USCIS Form I-130, "Petition
19  for Alien Relative" to obtain lawful status for his/her alien spouse.
20  Such a petition would be filed with USCIS. Once a Form I-130 was
21  filed, the alien relative was allowed to remain in the United States
22  until a decision was made on the petition.

23  Usually, the alien filed a USCIS Form I-485, "Application  to
24  Register Permanent Residence or Adjust Status" simultaneously with
25  the Form I-130.  Once the legitimacy of a marriage had been
26  established, the Form I-130 was approved.  The alien's Form I-485
27  application would then be reviewed to determine eligibility to become
28  a lawful permanent resident.

If the alien appeared eligible, his or her Form I-485 would be approved.  If the alien had been married to the citizen for less than two years, he or she would have been granted conditional resident status, allowing him or her to remain and work in the United States.

After a period of two years of marriage, the U.S. citizen spouse could file a USCIS Form I-751 "Petition to Remove the Conditions of Residence" from the alien relative's status.  If approved, the alien would then become a lawful permanent resident.

After having maintained lawful permanent status as a spouse of a U.S. citizen for three years, the alien could then apply for U.S. citizenship via users Form N-400, "Application for Naturalization." In order to naturalize, the alien was required to show, among other things, that she or he had been lawfully admitted as a permanent resident and that she or he had been a person of good moral character.  An applicant for naturalization was precluded from establishing good moral character if she or he had given false testimony under oath for the purpose of obtaining an immigration benefit.

Beginning on a date unknown but no later than January 21, 2015, and continuing until at least on or about October 12, 2016, in Los Angeles and Orange Counties, within the Central District of California, and elsewhere, defendant conspired with others to commit offenses against the United States, namely:

a.   To knowingly and unlawfully enter into a marriage for the purpose of evading a provision of the immigration laws of the United States, without intending to establish a life together as husband and wife, in violation of Title 8, United States Code, Section 1325(c);

b.   To knowingly present an application, affidavit, and other document required by the immigration laws and regulations prescribed thereunder, under oath and under penalty of perjury, knowing that it contained a false statement with respect to a material fact and failed to contain any reasonable basis in law and fact, in violation of Title 18, United States Code, Section 1546(a); and

c.   To defraud the United States and its agencies by impeding, impairing, obstructing, and defeating the lawful governmental functions of its agencies, namely, USCIS, by deceitful and dishonest means.

The objects of the conspiracy were to be accomplished, in substance, as follows:

a.   Defendant would ask a co-conspirator United States citizen ("CC1") to marry him so he could obtain legal status and remain in the United States.

b.   Defendant would marry CC1 for the sole purpose of evading the immigration laws of the United States, without intending to establish a life together as husband and wife.

c.   Defendant would pay CC1 for marrying him.

d.   Defendant and CC1 would take pictures together to use in proceedings with USCIS to make it appear that they had not committed marriage fraud and their marriage was valid.

e.   Defendant would sign a Form I-485 where he stated that he was married to CC1.

f.   CC1 would sign a Form I-130 where she stated that she was married to defendant.

g.   Defendant would interview with an immigration officer and make it appear that he and CC1 had a valid marriage.

h.  Defendant would submit documentation to USCIS via his immigration lawyer to make it appear that he and CC1 had a valid marriage, including a rental agreement listing both their names.

In furtherance of the conspiracy, and to accomplish the objects of the conspiracy, on or about the following dates, defendant, and others, committed various overt acts in Los Angeles and Orange Counties, within the Central District of California, and elsewhere, including, but not limited to, the following:

Overt Act No. 1: On or about January 21, 2015, defendant married CC1 for the purpose of evading the immigration laws of the United States, without intending to establish a life together as husband and wife.

Overt Act No. 2:  On or about January 21, 2015, defendant paid CC1 for marrying him.

Overt Act No. 3:  On or about June 19, 2015, defendant signed a Form I-485, in which he listed CC1 as his United States citizen wife.

Overt Act No. 4:  On or about July 28, 2015, CC1 signed a Form I-130, in which she listed defendant as her immigrant husband.

Overt Act No. 5:  On or about March 14, 2016, defendant and CC1 went to an interview at USCIS, where USCIS would attempt to determine if their marriage was valid.

Overt Act No. 6:  On or about April 20, 2016, defendant provided his immigration counsel with documentation, including a lease agreement, an insurance policy, bank records, a DMV record, and bills, to be provided to USCIS so USCIS would find that his marriage with CC1 was valid.

1

SENTENCING FACTORS

2      14.  Defendant understands that in determining defendant's

3 sentence the Court is required to calculate the applicable Sentencing

4 Guidelines range and to consider that range, possible departures

5 under the Sentencing Guidelines, and the other sentencing factors set

6 forth in 18 U.S.C. § 3553(a).  Defendant understands that the

7 Sentencing Guidelines are advisory only, that defendant cannot have

8 any expectation of receiving a sentence within the calculated

9 Sentencing Guidelines range, and that after considering the

10 Sentencing Guidelines and the other § 3553(a) factors, the Court will

11 be free to exercise its discretion to impose any sentence it finds

12 appropriate between the mandatory minimum and the maximum set by

13 statute for the crimes of conviction.

14      15.  Defendant and the USAO agree to the following applicable

15 Sentencing Guidelines factors:

16 **Group One:**

| | | |
|---|---|---|
| Base Offense Level: | 7 | USSG § 2B1.1(a)(1) |
| >$550,000 in loss | +14 | USSG § 2B1.1(b)(1)(H) |
| >10 Victims | +2 | USSG § 2B1.1(b)(2)(A) |
| Possession and Use of Authentication Features | +2 | USSG § 2B1.1(b)(11)(A) |
| Minor Participant | -2 | USSG § 3B1.2(b) |

24 **Group Two:**

| | | |
|---|---|---|
| Base Offense Level | 8 | U.S.S.G. § 2L2.2(a) |

1    Defendant and the USAO reserve the right to argue that
2  additional specific offense characteristics, adjustments, and
3  departures under the Sentencing Guidelines are appropriate.
4    16.  Defendant understands that there is no agreement as to
5  defendant's criminal history or criminal history category.
6    17.  Defendant and the USAO reserve the right to argue for a
7  sentence outside the sentencing range established by the Sentencing
8  Guidelines based on the factors set forth in 18 U.S.C. § 3553(a)(1),
9  (a)(2), (a)(3), (a)(6), and (a)(7).

10                  <u>WAIVER OF CONSTITUTIONAL RIGHTS</u>

11    18.  Defendant understands that by pleading guilty, defendant
12  gives up the following rights:

13         a.   The right to persist in a plea of not guilty.

14         b.   The right to a speedy and public trial by jury.

15         c.   The right to be represented by counsel -- and if
16  necessary have the court appoint counsel -- at trial.  Defendant
17  understands, however, that, defendant retains the right to be
18  represented by counsel -- and if necessary have the Court appoint
19  counsel -- at every other stage of the proceeding.

20         d.   The right to be presumed innocent and to have the
21  burden of proof placed on the government to prove defendant guilty
22  beyond a reasonable doubt.

23         e.   The right to confront and cross-examine witnesses
24  against defendant.

25         f.   The right to testify and to present evidence in
26  opposition to the charges, including the right to compel the
27  attendance of witnesses to testify.

28

g.   The right not to be compelled to testify, and, if defendant chose not to testify or present evidence, to have that choice not be used against defendant.

h.   Any and all rights to pursue any affirmative defenses, Fourth Amendment or Fifth Amendment claims, and other pretrial motions that have been filed or could be filed.

<u>WAIVER OF APPEAL OF CONVICTION</u>

19.   Defendant understands that, with the exception of an appeal based on a claim that defendant's guilty pleas were involuntary, by pleading guilty defendant is waiving and giving up any right to appeal defendant's conviction on the offenses to which defendant is pleading guilty.  Defendant understands that this waiver includes, but is not limited to, arguments that the statutes to which defendant is pleading guilty are unconstitutional, and any and all claims that the statement of facts provided herein is insufficient to support defendant's pleas of guilty.

<u>LIMITED MUTUAL WAIVER OF APPEAL OF SENTENCE</u>

20.   Defendant gives up the right to appeal all of the following: (a) the procedures and calculations used to determine and impose any portion of the sentence; (b) the term of imprisonment imposed by the Court, provided it is no more than the high-end of the Sentencing Guidelines range calculated by the Court; (c) the fine imposed by the Court, provided it is within the statutory maximum; (d) to the extent permitted by law, the constitutionality or legality of defendant's sentence, provided it is within the statutory maximum; (e) the amount and terms of any restitution order provided it is no more than $684,819.46; (f) the term of probation or supervised release imposed by the Court, provided it is within the statutory

maximum; and (g) any of the following conditions of probation or supervised release imposed by the Court: the conditions set forth in Second Amended General Order 20-04 of this Court; the drug testing conditions mandated by 18 U.S.C. §§ 3563(a)(5) and 3583(d); and the alcohol and drug use conditions authorized by 18 U.S.C. § 3563(b)(7).

21.  Defendant also gives up any right to bring a post-conviction collateral attack on the convictions or sentence, including any order of restitution, except a post-conviction collateral attack based on a claim of ineffective assistance of counsel or an explicitly retroactive change in the applicable Sentencing Guidelines, sentencing statutes, or statutes of conviction.  Defendant understands that this waiver includes, but is not limited to, arguments that the statutes to which defendant is pleading guilty are unconstitutional, that newly discovered evidence purportedly supports defendant's innocence, and any and all claims that the statement of facts provided herein is insufficient to support defendant's pleas of guilty.

22.  The USAO agrees that, provided all portions of the sentence are at or below the statutory maximum specified above, the USAO gives up its right to appeal any portion of the sentence, with the exception that the USAO reserves the right to appeal the amount of restitution ordered.

<u>RESULT OF WITHDRAWAL OF GUILTY PLEAS</u>

23.  Defendant agrees that if, after entering guilty pleas pursuant to this agreement, defendant seeks to withdraw and succeeds in withdrawing defendant's guilty pleas on any basis other than a claim and finding that entry into this plea agreement was involuntary, then (a) the USAO will be relieved of all of its

18

obligations under this agreement; and (b) should the USAO choose to pursue any charge that was either dismissed or not filed as a result of this agreement, then (i) any applicable statute of limitations will be tolled between the date of defendant's signing of this agreement and the filing commencing any such action; and (ii) defendant waives and gives up all defenses based on the statute of limitations, any claim of pre-indictment delay, or any speedy trial claim with respect to any such action, except to the extent that such defenses existed as of the date of defendant's signing this agreement.

<u>EFFECTIVE DATE OF AGREEMENT</u>

24.   This agreement is effective upon signature and execution of all required certifications by defendant, defendant's counsel, and an Assistant United States Attorney.

<u>BREACH OF AGREEMENT</u>

25.   Defendant agrees that if defendant, at any time after the signature of this agreement and execution of all required certifications by defendant, defendant's counsel, and an Assistant United States Attorney, knowingly violates or fails to perform any of defendant's obligations under this agreement ("a breach"), the USAO may declare this agreement breached.  All of defendant's obligations are material, a single breach of this agreement is sufficient for the USAO to declare a breach, and defendant shall not be deemed to have cured a breach without the express agreement of the USAO in writing. If the USAO declares this agreement breached, and the Court finds such a breach to have occurred, then: (a) if defendant has previously entered guilty pleas pursuant to this agreement, defendant will not

be able to withdraw the guilty pleas, and (b) the USAO will be relieved of all its obligations under this agreement.

26. Following the Court's finding of a knowing breach of this agreement by defendant, should the USAO choose to pursue any charge that was either dismissed or not filed as a result of this agreement, then:

a.  Defendant agrees that any applicable statute of limitations is tolled between the date of defendant's signing of this agreement and the filing commencing any such action.

b.  Defendant waives and gives up all defenses based on the statute of limitations, any claim of pre-indictment delay, or any speedy trial claim with respect to any such action, except to the extent that such defenses existed as of the date of defendant's signing this agreement.

c.  Defendant agrees that: (i) any statements made by defendant, under oath, at the guilty plea hearing (if such a hearing occurred prior to the breach); (ii) the agreed to factual basis statement in this agreement; and (iii) any evidence derived from such statements, shall be admissible against defendant in any such action against defendant, and defendant waives and gives up any claim under the United States Constitution, any statute, Rule 410 of the Federal Rules of Evidence, Rule 11(f) of the Federal Rules of Criminal Procedure, or any other federal rule, that the statements or any evidence derived from the statements should be suppressed or are inadmissible.

## COURT AND UNITED STATES PROBATION AND PRETRIAL SERVICES

## OFFICE NOT PARTIES

27. Defendant understands that the Court and the United States Probation and Pretrial Services Office are not parties to this agreement and need not accept any of the parties' sentencing recommendations or the parties' agreements to facts or sentencing factors.

28. Defendant understands that both defendant and the USAO are free to: (a) supplement the facts by supplying relevant information to the United States Probation and Pretrial Services Office and the Court, (b) correct any and all factual misstatements relating to the Court's Sentencing Guidelines calculations and determination of sentence, and (c) argue on appeal and collateral review that the Court's Sentencing Guidelines calculations and the sentence it chooses to impose are not error, although each party agrees to maintain its view that the calculations in paragraph 15 are consistent with the facts of this case.  While this paragraph permits both the USAO and defendant to submit full and complete factual information to the United States Probation and Pretrial Services Office and the Court, even if that factual information may be viewed as inconsistent with the facts agreed to in this agreement, this paragraph does not affect defendant's and the USAO's obligations not to contest the facts agreed to in this agreement.

29. Defendant understands that even if the Court ignores any sentencing recommendation, finds facts or reaches conclusions different from those agreed to, and/or imposes any sentence up to the maximum established by statute, defendant cannot, for that reason, withdraw defendant's guilty pleas, and defendant will remain bound to

21

1  fulfill all defendant's obligations under this agreement.  Defendant

2  understands that no one -- not the prosecutor, defendant's attorney,

3  or the Court -- can make a binding prediction or promise regarding

4  the sentence defendant will receive, except that it will be within

5  the statutory maximum.

6  <u>NO ADDITIONAL AGREEMENTS</u>

7      30.  Defendant understands that, except as set forth herein,

8  there are no promises, understandings, or agreements between the USAO

9  and defendant or defendant's attorney, and that no additional

10  promise, understanding, or agreement may be entered into unless in a

11  writing signed by all parties or on the record in court.

12  <u>PLEA AGREEMENT PART OF THE GUILTY PLEA HEARING</u>

13      31.  The parties agree that this agreement will be considered

14  part of the record of defendant's guilty plea hearing as if the

15  entire agreement had been read into the record of the proceeding.

16  AGREED AND ACCEPTED

17  UNITED STATES ATTORNEY'S OFFICE
   FOR THE CENTRAL DISTRICT OF
18  CALIFORNIA

19  TRACY L. WILKISON
   United States Attorney

20

21  _____          2/18/2022
   JENNIFER L. WAIER                   _____
22  Assistant United States Attorney   Date

23

24  _____          2/15/22
   OLAYINKA FAMOFO-IDOWU               _____
25  Defendant                          Date

26

27  _____          2/15/22
   CORREEN FERRENTINO                  _____
28  Attorney for Defendant             Date
   OLAYINKA FAMOFO-IDOWU

                        22

## CERTIFICATION OF DEFENDANT

I have read this agreement in its entirety. I have had enough time to review and consider this agreement, and I have carefully and thoroughly discussed every part of it with my attorney. I understand the terms of this agreement, and I voluntarily agree to those terms. I have discussed the evidence with my attorney, and my attorney has advised me of my rights, of possible pretrial motions that might be filed, of possible defenses that might be asserted either prior to or at trial, of the sentencing factors set forth in 18 U.S.C. § 3553(a), of relevant Sentencing Guidelines provisions, and of the consequences of entering into this agreement. No promises, inducements, or representations of any kind have been made to me other than those contained in this agreement. No one has threatened or forced me in any way to enter into this agreement. I am satisfied with the representation of my attorney in this matter, and I am pleading guilty because I am guilty of the charges and wish to take advantage of the promises set forth in this agreement, and not for any other reason.

_____     2/15/22
OLAYINKA FAMOFO-IDOWU                 Date
Defendant

## CERTIFICATION OF DEFENDANT'S ATTORNEY

I am OLAYINKA FAMOFO-IDOWU's attorney. I have carefully and thoroughly discussed every part of this agreement with my client. Further, I have fully advised my client of his rights, of possible pretrial motions that might be filed, of possible defenses that might

1   be asserted either prior to or at trial, of the sentencing factors

2   set forth in 18 U.S.C. § 3553(a), of relevant Sentencing Guidelines

3   provisions, and of the consequences of entering into this agreement.

4   To my knowledge: no promises, inducements, or representations of any

5   kind have been made to my client other than those contained in this

6   agreement; no one has threatened or forced my client in any way to

7   enter into this agreement; my client's decision to enter into this

8   agreement is an voluntary one; and the factual basis set forth in

9   this agreement is sufficient to support my client's entry of guilty

10   pleas pursuant to this agreement.

11

12   CORREEN FERRENTINO         Date  2/15/22

    Attorney for Defendant

13   OLAYINKA FAMOFO-IDOWU

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

24